May it please the Court, James Lucas. I understand you've all read the briefs. I basically have examining new evidence in light of McWiggins v. Perkins. I've identified in my brief 8 different grounds of ineffective, actually I guess you should say 9, starting with trial counsel's failure to develop what I would consider argued as exculpatory information by Martha Carzoli regarding events occurring right after the shooting. Failure to call Daniel O'Connor as a witness to establish O'Connor actually fired the gun that killed the decedent. Trial counsel's failure to question Adrian Cuellar Sanchez about his post-shooting observations. Failure of trial counsel to identify Daniel O'Connor as a witness since he identified Daniel O'Connor, not my client, as the shooter in his statement to the police. Failure to question Jose Diaz-Esparza about his written statement and particularly about seeing the person described as O'Connor immediately come back into the bar after he was shot. He's the one that started the fight in the bar over some women. There's no dispute in the record about that. And failure to prove that O'Connor owned the vehicle used by the shooter. All the witness testimony basically indicates the shooter attempted to flee in a car and there was no proof that he was the shooter. They found trace residue amounts on Daniel O'Connor, not my client. Basically, you know, the district court below denied a certificate of appealability. It's my position. They did not, the court did not analyze the ineffective assistance claims that it was ordered to do. Essentially the only evidence, I guess, that you could say that they looked at was a post-judgment affidavit given by Martha Carzoli. In this affidavit, she says now in light of what she was presented in terms of that she's not sure as to who the shooter was. We believe that the position of appellant here is that the district court should have looked at all of the ineffective assistance grounds that I have alleged in addition to the complaint that the police should not have shown this prejudicial pre-trial photo of my client without his shirt or anything. It showed him tatted all over the body and it made him basically look like a gang member and of course when he was in the bar he was fully clothed so there was no reason to show that. Counsel, do you agree that the McQuiggan v. Perkins case, which is how we got back here or how we got here, requires that you have new reliable evidence that shows it is more likely than not that no reasonable juror would have convicted your client? Correct. And that new reliable evidence, according to you, is this affidavit, right? Affidavit and the statements or the portions of witness statements that were never And none of these established unequivocally who the shooter, these things just create doubt or confusion. They don't actually establish it in a way that no reasonable juror would have convicted, do they? Well, I think they do because you have to understand it's really important to note in the trial record that there's no disagreement that the shooter was immediately chased out of the bar. And according to Carzoli, the shooter was grabbed right before he entered the driver's seat of the vehicle. Now I know the state of Texas takes the argument, it doesn't matter whether it was the passenger or the driver, but that is very critical. She's very clear that the shooter is the person that was in the driver's seat of the vehicle, the Chevy Malibu. And it's that person who the gun is snatched from by a person identified only in the record as cowboy, whoever he is. We don't know who he is. He didn't testify. But you basically, when you look at that and you combine it with Carzoli's testimony at trial, she got the color of the gun wrong. She said in her written statement, she said it was a black-colored gun. The record reflects it was a chrome-colored gun. When asked by grilled about that by defense counsel, well, how did you get the color of the gun wrong if you're saying it was, she says, well, she indicates when he grills her, it was maybe too far away. Because this bar is very poorly lit. I think there's an indication there may have been as many as 100 people packed into this tiny bar. And then when she's grilled more about her testimony, she says she's not sure that she can remember it that well. That's in her trial testimony. And another real problem with her trial testimony was she asked how the gun was pulled, and she said out of a jacket or something. Well, my client was wearing a windbreaker. There were no pockets to be pulled out. That's what makes Benito Pantoja's statement that the gun was pulled out of the pocket particularly credible because there was no pockets in either Ocone or my client that could have pulled any jacket. The state makes a lot out of the fact that my client doesn't say that it's Daniel Ocone. Well, this isn't – and maybe I used the wrong word in my brief talking about recanting because usually it's used in the context where somebody with malicious motives makes an allegation against somebody. And then later they say, you know, I said this about my stepdad and it wasn't true because I hated him at the time. This is a case – what I'm arguing here is a case of mistaken identification. And when we presented Ms. Carzula with all these problems, this is where I think why she came to the conclusion she made a mistake. She's not going to tell you here this Mr. Ocone because if you made a mistake originally, what does that mean? It means you don't know who the shooter was, and that's the problem. But her testimony had so many problems with it, not to mention where she mentioned Ocone was. She said he was outside the bar, and then she mentioned, you know, he was in the car. And, in fact, she testified that when my client was coming in the bar, just as he was being thrown out of the bar, Ocone. That chronologically is not possible from the testimony. It's clear the shooting occurred. At least the shooter was – or no, the fight occurred. I've heard all the things you're talking about, and now the jury heard. No, I wouldn't agree with that. What didn't, did he? They didn't hear from Benito Pantoja. Well, I'm talking about Carzula's testimony. I thought you were talking about her testimony just now. Well, no, no, I'm talking about – there are a lot of witnesses. Particularly there were three people that grabbed the shooter from the driver's door, and that was – one was – that was Adrian Sanchez. He testified, but he didn't testify about the shooter opening the driver's door and the shooter being – or the person being pulled out. He also indicated the gun was pulled from the driver's door. No testimony by him. On Esparza, Jose Esparza, he also testified. Now he, in his statement, he says he doesn't know who the shooter was. At trial he said it was my client. Then later he says, no, I don't know if it was your client. So he completely became a non-issue as a witness in terms of – so that only left Carzula. But what he was not questioned about was the fact that he said the shooter, who he describes as the black striped sweater with coming back into the bar and pulling the gun. That description, black sweater, fit Ocone. It did not fit Viscata, who was wearing a windbreaker. That was exculpatory. It was not developed. But the biggest problem, the real problem overall is the defense counsel did not develop that chronology that the shooter was chased right to the driver's side. That he tried to peel out. The car blocked him in. Three people grabbed him, manhandled him, took the gun from him, held him there on the cement. My client's clothing was found on the passenger side, the windbreaker and the shoe. If you're going to believe Carzula's statement, her testimony that she followed the shooter, grabbed him right before he got in the driver's car, you cannot conclude that it is my client. You would have to conclude that it is Ocone. And by the way, I forgot to mention it. Ocone admits to basically everything that Carzula says is the shooter. Ocone, Daniel Ocone, admits to running out to his car. He admits that he's the owner of the car. He admits that he starts it up, that he tries to get out, that he's blocked in, he can't get away. And then he's pulled out. He calls it three guys and a fat lady. And Ms. Carzula was a little on the heavy set side. Pull him out. Now, of course he doesn't admit to the gun because he doesn't want to admit that he was the shooter. But when you look at how she describes the shooter, it fits exactly with what Ocone says. Counsel, do you, though, agree that you have to establish this in light of the new evidence? It must be more likely than not that no reasonable jury would find him guilty before we even get to your Strickland claims, your ineffectiveness claims. You have to do the gateway first. I believe that. I agree with that. Okay. I agree with that. So if you can't do the gateway, we can't get to whether or not there was ineffectiveness on failing to call certain witnesses or do certain things. I agree. That's my understanding of the law. Okay. How do you distinguish the Bosley case that was cited? You know, I read the case and I'm trying to remember. What I recall, it was a recanted testimony. What I was talking about earlier where it was a claim of somebody who said a stepfather type situation making a claim. She says she fabricated the story at the mother's behest. Yeah. And the court held that at best the new evidence shows a reasonable doubt could have been found to exist, but it fails to satisfy the burden of showing that no reasonable jury could have found him guilty. So the court finds that it doesn't satisfy the standard. Right. So I'm wondering why your case is better than that case. You know, where somebody makes an allegation of a child against a stepparent and then later recants it because you don't know if the stepparent later made the stepchild recant it. You don't really know what the family dynamics are in that family. Well, I guess in that connection here, and I appreciate Judge Elrod's question because I was getting – I was having trouble discerning whether or not you were talking about your gateway claim or your IAC claim. But on your gateway claim, that's the actual innocence claim. Right. You rely primarily on this affidavit from Carzola. Is that right or is that incorrect? I would say I rely a lot on it. I wouldn't say primarily. All right. Benito Pantoja's statement is very important too. All right. What statement? Benito Pantoja's statement. So you say you rely a lot on it. I'm having difficulty agreeing with the characterization that it was a recantation. I think I might have used the wrong language there, Judge, in the sense that I think more recanted is a stepchild, stepparent thing. A recantation is I lied, I fabricated. Right. I think you're right. It's not true. That's not what we have here with this affidavit. Well, she's saying I'm not sure. Now looking at the whole thing, I'm not sure whether my client did it. She's now saying that she's not sure of her identification. That's what she's saying. Okay. So how does that plus the Pantoja, the other person's statement? Well, Benito Pantoja specifically says that he's standing right next to the shooter. He gets the color of the gun right, unlike her, chrome colored, walks right up. He says the bulge in his pants, that's consistent. That's where the gun would have been concealed because there's no way to hold it. There was no jacket. He says that whoever the shooter was, that the shooter walked right up. He identifies his clone right up to him and shoots him without giving a warning. And then, of course, he exits the bar. But aren't we left with a swearing match between the new evidence and the evidence offered at trial to some extent, like in the Bosley case, that these people are uncertain or have things that differ, but there are other people, other evidence that would point to your client? Well, again, I look at it differently in Bosley. And one thing you need to remember, the jury was 11-1 for not guilty in this case for two hours until, and I believe it was that prejudicial photo of my client tatted up without the clothing that changed it. But, I mean, the jury, with the existing evidence, had a lot of fun. Did they get that photo after they were at 11-1 for acquittal? No, that came during the regular trial. Well, I mean, because I read that, and it just struck me that if the vote was 11-1 for acquittal, I'm wondering what happened after an 11-1 for acquittal that now you can convict. I'm wondering the same thing. I don't understand how you could go from that. Well, but to the extent that that's viewed as they had everything they needed, whatever that was, to go from an 11-1 for acquittal to a conviction. They didn't get anything new. The only thing I can think of is they didn't like my client because I know that in trials a lot of times prejudice comes into it. I mean, if jurors, they think somebody's a gang member or bad, jurors tend to sometimes, I believe, that's when the rationality part of being a juror goes away. Well, and I guess I was a little envious because if I attributed it to the fact that there's this one person among the 12 who can convince all the others to go their way, I wish I could be that persuasive as a judge on this court. I certainly couldn't. All right. Thank you. I guess I have time for rebuttal. Thank you. May it please the Court. Martha Carzoli testified that the petitioner shot the decedent, Juan Holguin. She's never said that he wasn't the shooter, and she's never said that Daniel Lacone, petitioner's companion and the only other potential suspect, was the shooter. At best, petitioner has raised a question about what happened after the shooting, but the new testimony, the new evidence does not cast doubt on the critical testimony that Martha Carzoli offers and has not recanted. In order to show actual innocence, it's not enough to create or offer circumstantial doubt. He has to prove factual innocence under Schlupp, and he simply can't do so here. Effectively, he just challenges the legal sufficiency of the evidence, suggests, well, it wasn't as strong as it could have been, but that's not what he needs to show for actual innocence to overcome is untimeliness. Do we consider the Pinedo-Ozolo information as well? Mr. Pantojo? Pantoro. Excuse me. I apologize. Well, of course. The Court considers all the evidence, even if it would not necessarily be admissible, but Mr. Pantojo's testimony is problematic on both the actual innocence issue and on his actual Strickland claim. It's problematic on actual innocence because it's equivocal at best. He said some of it is good for the petitioner, some of it's not, and for the same reason, it's seriously problematic if he could even get to the Strickland claim for at least two reasons. First, that's exactly what his lawyer said about it. He said, I considered offering Mr. Pantojo, but ultimately I made a strategic decision because some of his testimony was good, some of it wasn't so good, and I just made the call. I'm not going to call him as a witness. The other reason it's a problem is that his counsel also testified in the state habeas proceedings that any witness that got called or didn't get called, that was with the petitioner's agreement. But all we're talking about right now is the granting of the COA. Isn't that what we're talking about now? Well, no. That's the relief he's asking. Well, no, I don't think that's true because the court granted a COA on the question of actual innocence, and it conditionally granted it on the Strickland claim. So if he gets through the gateway, then the court has effectively given him a preliminary COA grant on that. I'm just trying to weigh what the evidence is, the actual evidence, to see whether the gateway is met. Correct. And we're trying to consider all the things that were admitted and not admitted. How does the gateway—can he satisfy the gateway? That's right. And the critical problem with his case, based on Martha Carzoli's affidavit that she gave at the behest of petitioner's counsel 12 years after the murder, is that she knew who Daniel O'Cone was. She said, he's been in the bar before. We've cashed checks for him. She didn't know who the petitioner was. She had never seen him in the bar before, and she's very clear that O'Cone is the person who started the fight, the person she recognized, and the other guy, who I've never seen before, he's the one that pulled the trigger. Doubts about what happened after a gun went off in a crowded bar, a scuffle ensues, people are trying to get away, it doesn't affect the core testimony that the jury heard, which is consistent with what she told police. Petitioner pulled the trigger. And so that is fatal to his attempt to establish actual innocence, to overcome the time bar to his habeas petition. Even if, supposing he could overcome the time bar by showing actual innocence, the Court of Criminal Appeals has rejected his ineffective assistance claim on the merits, and so he's subject to EDPA's re-litigation bar. He couldn't overcome that. First of all, because he doesn't explain in his brief why it is that the Court of Criminal Appeals' rejection of his claim is either unreasonable or contrary to clearly established Supreme Court precedent. The most he says about it is, Strickland is clearly established law. Don't disagree with that, of course it is. But his burden is to show why the CCA's application of that is either contrary to Supreme Court law or unreasonable, and he hasn't even offered that, nor could he. His claim is based largely on uncalled witnesses, which that kind of argument is disfavored on federal habeas. At the very least, he has to show who he would have called, that they would have testified, what they would have said, and how it would have been favorable. The testimony he's offering is equivocal at best, and as I've said, in the context of actual innocence, it simply doesn't contradict or undermine the critical testimony linking him to the killing of Mr. Holguin. And that's essentially our position, and if the Court doesn't have any further questions, we would simply urge the Court to affirm the district court's denial of his habeas petition. I think we have your argument, counsel. Thank you. Thank you. The first point I would like to make is I think my understanding of the case law and what my burden of proof on a schluck claim is I have to show more likely than not, because the courts have indicated it's only a gateway. That's not an extremely high standard. So I think that's important to keep that in mind. I disagree with the Attorney General's contention that Pantoja's statement is not exculpatory or somehow equivocal. You have another guy in the bar that's clearly identifying the co-defendant in the case as the shooter and identifying the color of the gun right and seems to be giving a correct description in all regards. To me, that is clearly exculpatory. I did note in this brief that there's a discussion at the end of Mr. Pantoja's statement of him finding that Mr. Pantoja was in the car. There's no doubt that both of them were in the car, and there's a reference to the fact that when Mr. Pantoja saw Mr. Biscotta in the Chevy Malibu, his shirt had already been torn off and he saw the tattoos, and, of course, the shoe and the windbreaker were on the passenger side of the vehicle. All of that is post-shooting event after both O'Connor and Biscotta had been beat up and so forth. So I would argue that, and I would also argue that I don't think when you're looking at the stage of viewing all the evidence that you can get into a parsing, an ineffective assistance allegation at this point. My understanding of the case law is you have to look at all of the evidence before you go to the ineffective assistance claims. My client disputes why he's raised the allegation against not calling for Pantoja. And as far as the Court of Criminal Appeals, they denied this without any sort of hearing. And I believe the Attorney General has argued previously that there aren't fact findings made when there is no hearing conducted by the Court of Criminal Appeals or by the trial court below. So I really don't think that there's anything you can say that we're bound to. I understand that we have to present evidence, but there have not been facts that were found. What do you say in response to the argument that Ms. Carzulli doesn't actually say that your client is not the shooter and she knows Mr. O'Connor, so if she wanted to say he was the shooter, she could do so. She would not be vague about it. My response to that, after everything I've looked at, is I think she was angry that night there had been a shooting in a bar. I think she made statements hastily and out of anger and not really knowing what she had seen. I am a little bothered by the fact that she does know O'Connor because that would be that he was a regular. That would be a motive for her not to name him or identify him. That evidence actually, I think, favors me. Well, what about the fact that it's after the fact and you've gotten the best affidavit you can get, and she doesn't say that your client was not the shooter? Because she was angry at the time. That doesn't apply that she's angry this many years later. I think that seeing people in emotional events, especially, and I don't think Ms. Carzulli is a very educated sort of person, but I think she's the sort of person that would shoot her mouth off and say something out of anger or frustration, call it what you may, and not really know what she's saying. That bar was very dark that night. I personally have been there. And all the testimony, there were just tons of people in that bar. And I think she didn't want to get her friend in trouble, and I think she was mad at the other guy, my client. And I don't think she saw everything she saw. I don't think she saw O'Connor either. I mean, because how did she get the color of the gun wrong? There's a lot of details when she was pressed in trial. So the things about where she pulled the gun out of, color of the gun, it's chrome, not black. How far were you away? She basically acknowledged that she must have been a long distance away because the defense attorney did a very good job on that point. He says, hey, how come you couldn't see the color of the gun if you're five feet away, ten feet away? Well, if she can't see the color of the gun, did she see the shooter? I don't think so. And again, I do think, and I agree with Judge Graves' comment about recanting. I think I used the wrong word in there. I don't think it's really a recanted testimony. I think it's more in the nature of she's now, the anger part has gone by. She's now realizing I didn't see it, and I'm going to be truthful. I'm not sure who the shooter was. Thank you, counsel. We have your argument. Thank you, Your Honor. Thank you. This concludes the arguments for today. The court will stand in recess until tomorrow at 9 a.m. Thank you.